IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-17-254-M |
| ) | |
| TYRONE LEROY OUTLEY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion to Suppress Evidence, filed September 3, 2018. On September 12, 2018, the government filed its response. On September 24, 2018, the Court conducted a hearing on defendant's motion to suppress. At the hearing, Daniel Kleehammer, an Oklahoma City Police Department sergeant, and Joshua Castlebury, an Oklahoma City Police Department sergeant, testified. Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.  Factual Background[1]

On March 15, 2017, defendant was a passenger in a Chevy Impala driven by Alina Poole. Sergeant Kleehammer and Sergeant Castlebury were partners on March 15, 2017. At approximately 8 o'clock in the evening, they were traveling northbound on Cross Avenue when they observed the Chevy Impala approximately 30 feet in front of them.[2] Both Sergeant Kleehammer and Sergeant Castlebury observed the Chevy Impala slow down, but not completely stop, at the stop sign at the intersection of Cross Avenue and NW 20th Street. As a result, they

---

[1] This factual background is based upon the evidence presented at the hearing.
[2] Sergeant Castlebury was driving.

activated their emergency lights, and the Chevy Impala pulled over between NW 20th Street and NW 21st Street on Cross Avenue.

After the vehicle stopped, Sergeant Castlebury approached the driver, Ms. Poole, who told him that she did not have a driver's license. She was immediately arrested and taken into custody for driving without a license. While Sergeant Castlebury approached the driver, Sergeant Kleehammer approached the passenger side of the Chevy Impala. Sergeant Kleehammer started talking to defendant, who was the front seat passenger in the Chevy Impala. Sergeant Kleehammer noticed that defendant appeared nervous – he was looking around quickly and intently, was yawning, was stuttering, and had trouble answering simple questions. Sergeant Kleehammer asked defendant what his name was, and when defendant told him his name, Sergeant Kleehammer immediately recognized defendant's name in relation to his work on the gang unit. Specifically, Sergeant Kleehammer was aware that approximately a month prior to the stop, Sergeant Castlebury had made a vehicle stop, and both the driver and defendant, who was the passenger, had fled on foot. The driver was apprehended, but defendant was not, and when searching the area multiple firearms were recovered that were believed to have been in defendant's possession.[3]

While Ms. Poole was being arrested for driving without a license, Sergeant Kleehammer asked defendant to step out of the vehicle and to place his hands behind his back so Sergeant Kleehammer could conduct a pat-down search. As Sergeant Kleehammer was helping defendant put his hands behind his back, defendant broke free from Sergeant Kleehammer's grip and began to flee. Sergeant Kleehammer tackled him, and a struggle ensued. During the struggle, defendant attempted to reach into his left jacket pocket. Sergeant Kleehammer and Sergeant Castlebury

---

[3] When Sergeant Castlebury saw defendant in the passenger's seat, he immediately recognized him from the prior stop.

eventually secured defendant, and he was arrested for obstruction. The duration of the entire traffic stop lasted less than four minutes.

Defendant was searched incident to arrest, and the search revealed a loaded revolver and a single crack rock weighing 119.97 grams in defendant's left jacket pocket. Law enforcement also found three baggies containing cocaine base, marijuana, and $335. Defendant now moves to suppress this evidence.

II. Discussion

Defendant asserts that the initial traffic stop was unlawful and that the duration of the stop was unlawful. "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *See id.* To determine the reasonableness of an investigative detention, a court engages in a two-part inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *See id.*

> An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* at 1348 (internal quotations and citations omitted).

Having heard the evidence presented,[4] the Court finds that the initial traffic stop of the Chevy Impala was valid under the Fourth Amendment. Specifically, the Court finds that Sergeant Kleehammer and Sergeant Castlebury were justified in stopping the Chevy Impala based upon the failure of the Chevy Impala to come to a complete stop at the stop sign at NW 20th Street and Cross Avenue, as the failure to stop at a stop sign is a violation of the Oklahoma City Municipal Code, as well as Oklahoma state law. *See* Okla. City Ordinances, ch. 32, art. V, § 281; Okla. Stat. tit. 47, § 11-703(d).

Further,

> [a]n officer may not extend a traffic stop beyond a reasonable duration necessary to accomplish the purpose of the stop unless the driver consents to further questioning or the officer has reasonable suspicion to believe other criminal activity is afoot. While a traffic stop is ongoing, however, an officer has wide discretion to take reasonable precautions to protect his safety. Obvious precautions include running a background check on the driver and removing the occupants from the vehicle. Furthermore, because passengers present a risk to officer safety equal to the risk presented by the driver, an officer may ask for identification from passengers and run background checks on them as well.

*United States v. Rice*, 483 F.3d 1079, 1083-84 (10th Cir. 2007) (internal citations omitted).

Having heard the evidence presented, the Court finds that the traffic stop in this case was not extended beyond a reasonable duration necessary to accomplish the purpose of the stop, which had been in progress for only a minute or two when defendant was asked to step out of the vehicle. Further, the Court finds that the removal of defendant from the vehicle was fully justified for officer safety concerns, particularly in light of defendant's nervous behavior and Sergeant

---

[4] The Court would specifically find that Sergeant Kleehammer and Sergeant Castlebury are credible witnesses.

Kleehammer's knowledge that defendant had fled from a traffic stop approximately one month prior to the instant traffic stop and was likely armed during the previous traffic stop.

Finally,

> [a] pat-down search must be justified by a reasonable suspicion that a person is armed and dangerous. During investigative stops, including a traffic stop, an officer may perform a pat-down search where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.
> We view the officer's conduct through a filter of common sense and ordinary human experience.

*Id.* at 1082-83 (internal quotations and citations omitted).

Having heard the evidence presented, the Court finds the attempted pat-down search of defendant was justified in this case. Specifically, the Court finds that a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Approximately one month prior to the instant stop, defendant was a passenger in a vehicle that had been stopped, had fled from the police, and firearms had been found in the area where defendant had fled and were thought to have originally been on his person.

III. Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Defendant's Motion to Suppress Evidence [docket no. 48].

**IT IS SO ORDERED this 27th day of September, 2018.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE